600 A.2d 672

**In re Appeal of Daniel BLYSTONE,
Daniel Blystone, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 11, 1991.
Decided Dec. 4, 1991.

28

Ronald P. Koerner, for appellant.

Robert J. Garvin, for appellee.

Before DOYLE and SMITH, JJ., and SILVESTRI, Senior Judge.

DOYLE, Judge.

This is an appeal[1] by Daniel Blystone from an order of the Court of Common Pleas of Allegheny County which affirmed the decision of the Civil Service Commission (Commission) of Braddock Hills Borough upholding the reduction in rank of Blystone from Chief of Police of Braddock Hills to patrolman.

The Commission made the following pertinent findings.[2] Blystone was designated Chief of Police effective January

---

1. This case was reassigned to the opinion writer on August 27, 1991.

2. We note that on appeal the common pleas court did not take additional evidence or provide a de novo review of the Commission's findings, believing itself to be bound by *Staton v. Civil Service Commission of the City of Philadelphia*, 1 Pa.Commonwealth Ct. 543, 275 A.2d 716 (1971). That case is inapposite as there the officer's right to appeal and the trial court's scope of review were derived from Section 7–201 of the Philadelphia Home Rule Charter, 351 Pa.Code § 7.7–201, which directs that the Philadelphia Civil Service Commission's findings will be "final and there shall be no further appeal on the merits, but there may be an appeal to the courts on jurisdictional or procedural grounds." The instant case, however, does not arise under Philadelphia's Home Rule Charter but under Section 1190 of The Borough Code, (Code) Act of February 1, 1966, P.L. (1965) 1656, *as amended*, 53 P.S. § 46190, which authorizes a police officer's reduction in rank for "[n]eglect or violation of any official duty." Further, Section 1191 of the Code, 53 P.S. § 46191, which concerns the trial court's scope of review directs that "[a]ll parties concerned shall have immediate right of appeal to the court of common pleas of the county, and the case shall be determined *as the court deems proper*" (emphasis added). Thus, the trial court here had the authority to conduct a more expansive and de novo review. Blystone, however, has not raised in this Court the issue of the trial court employing an incorrect scope of review and that issue is, accordingly, waived. *C.f. Merulli Appeal*, 70 Pa.Commonwealth Ct. 262, 453 A.2d 27 (1982) (issue of de novo hearing was raised before trial court so remand was proper).

15, 1977 by the Borough of Braddock Hills Council. Later that year the Commission was established. Blystone served as Chief of Police until his reduction in rank on April 30, 1986.

According to the Commission's findings, on January 11, 1986 Douglas Babjak was arrested by Braddock Hills police officer Carl Ayers. At the time of his arrest Babjak had a blood alcohol content of .21%. Blystone advised Ayers, his subordinate, that Ayers was not to file charges for driving under the influence against Babjak but instead to cite him for reckless driving and public drunkenness. Ayers complied. Similar instances occurred on four other occasions and with respect to two of the files for those motorists the Commission found that they were missing from Blystone's office while under his custody. Finally, the Commission found that on January 4, 1984 Blystone wrote a letter to the district magistrate requesting "that all traffic and non-traffic citations be issued to myself only" and that all appearance notices were to be directed to him rather than to the arresting officers. Based on these findings, the Commission determined that Blystone had violated and neglected his duties within the meaning of Section 1190 of The Borough Code; *see supra* n. 2; it therefore upheld his reduction in rank. Blystone appealed and as previously noted the common pleas court affirmed. *See supra* n. 2. Further appeal to this Court ensued.

Therefore, we shall employ the *Commission's* findings in reviewing this case.

Further, this Court has some question as to whether the mere reduction in rank of a Chief of Police is within the ambit of the Commission. Normally the position of Chief of Police is held at the discretion of the governing body. The Commission, however, found that "at the times in question concerning Chief Blystone's actions, he was, in fact, subject to civil service protection and, therefore, was entitled to a civil service hearing pending his demotion." That finding is not challenged and we have found no case on point which would indicate that the demotion from the position of Chief of Police could never be subject to civil service protection. We therefore assume, without expressly deciding, that jurisdiction was properly exercised by the Commission in this instance.

On appeal Blystone presents several issues for our consideration. First, he maintains that his right to due process was violated when Civil Service Commissioner Rick Rhodes declined to recuse himself. Blystone asserts that Rhodes had a personal bias against him. The record discloses that in the recusal motion Blystone's counsel asserted that Rhodes, who had previously been President of the Borough Council, had on two or more occasions been involved in disciplinary actions taken against Blystone. Further, the deposition of one James McClafferty, an individual who had known both Blystone and Rhodes all of his life, reveals that Rhodes stated to McClafferty while Rhodes was Council President that he thought Blystone should have been fired, not just demoted. When asked about this statement at the civil service hearing Rhodes indicated that he had expressed his opinion as a private citizen at a time previous to his becoming a member of the Commission and further indicated that he felt he could fairly adjudicate the case based upon the evidence presented.

A trial court judge may decide his own recusal motion in the first instance. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985). We see no basis for a different rule for a Commissioner acting in his judicial capacity. Before it can be said that a judge (or commissioner) should have recused himself the record must demonstrate bias, prejudice, capricious disbelief or prejudgment. *Nemeth v. Nemeth,* 306 Pa.Superior Ct. 47, 451 A.2d 1384 (1982). If a judge (or commissioner) thinks he is capable of hearing a case fairly his decision not to withdraw will ordinarily be upheld upon appeal. *North Canton Enterprises of Pennsylvania, Inc. v. Township of Ross,* 74 Pa. Commonwealth Ct. 479, 459 A.2d 1366 (1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 687 (1984). Our review of this issue is limited to determining whether the judge (or commissioner here) abused his discretion. *Reilly.* While Rhodes' statement (which he never denied) could be viewed as prejudging the case, it is important to note that he

clarified at the civil service hearing that he had merely been expressing his opinion as a private citizen at a time *before* he became a Commissioner and that he felt he could decide the case as a Commissioner on the evidence presented. Because his statements were not made while he was a Commissioner we believe there was no actual prejudgment and, hence, no abuse of discretion in the decision not to recuse.

■ Next, Blystone contends that the Borough violated Section 4 of the Sunshine Act, Act of July 3, 1986, P.L. 388, 65 P.S. § 274.[3] This provision states, "official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public...." Official action is defined in Section 3 of the Sunshine Act, 65 P.S. § 273, as:

(1) Recommendations made by an agency pursuant to statute, ordinance or executive order.

(2) The establishment of policy by an agency.

(3) The decisions on agency business made by an agency.

(4) The vote taken by any agency on any motion, proposal, resolution, rule, regulation, ordinance, report or order.

Blystone contends that this provision was violated because the Borough failed to vote on and adopt *the charges* against him at an open meeting. The record discloses, however, that the district attorney's office was investigating the non-issuance of citations for driving under the influence charges. Section 16 of the Sunshine Act, 65 P.S. § 286, exempts from the Act's open meeting provision official actions "which, if conducted in public, would violate a lawful privilege or lead to the disclosure of information or confidentiality protected by law, including matter related to the investigation of possible or certain violations of the law...." We believe that this provision applies here.

Furthermore, Blystone only argues that it was *the charges* which were not voted on at an open meeting, not

---

**3.** Blystone actually cites to the predecessor statute.

the vote first to suspend him [4] or the final vote to demote him. Reference to the proceedings of the February 17, 1987 public council meeting, however, makes it abundantly clear that the decision to demote Blystone was voted upon by Council at that meeting. That meeting was described as "riotous" and had television coverage.[5] It is also clear from

4. The first action of the Borough Council to suspend Blystone was taken at a special public meeting on April 30, 1986. The minutes of that special meeting read:

   SPECIAL MEETING OF THE BRADDOCK HILLS COUNCIL— HELD APRIL 30, 1986 AT THE COMMUNITY CENTER

   President Dorr called the meeting to order at 8:00 p.m.

   All councilmembers present. Also present were Secretary Martin, Mayor Foster and Solicitor Kamin.

   President Dorr stated the purpose of this meeting is for police matters only as advertised.

   Solicitor Kamin stated the proof of publication of this meeting should be filed with the minutes of this meeting. (Proof Attached)

   Motion made by Mr. Matthews seconded by Mr. McClesky to reprimand the Chief with a letter to be placed in his file which are the rules of the Borough Code.

   Mr. Matthews stated I can't see any other way to handle this matter. The letter would state we firmly dislike the altering of the tickets. As far as I am concerned there is nothing wrong with what he did. I feel this could be handled in our own Borough with our own Code.

   Mr. McClesky stated he seconded the motion strictly because he did not hear the Chiefs side.

   Roll Call: French no, Koren no, Matthews yes, McClesky yes, Henkel no, Dorr no, Escher no.

   Motion Defeated.

   *Motion made by Mr. Koren seconded by Mr. Henkel to relieve Daniel Blystone from his duties and salary as Chief of Police of Braddock Hills pending the results of an investigation into certain labor matters and for him to assume the duties and the appropriate pay scale of a patrolman effective immediately.*

   Roll Call: Escher yes, French yes, Koren yes, Matthews no, McClesky no, Henkel yes, Dorr yes.

   *Motion Carried.*

   Motion made by Mr. French seconded by Mr. Koren to appoint John Suiter a full time Braddock Hills policeman to act as Chief of Police of Braddock Hills on an interim basis effective immediately.

   Roll Call: Koren yes, French yes, Escher yes, Matthews no, McClesky no, Henkel yes, Dorr yes.

   Motion Carried.

   (Borough Exhibit G) (emphasis added).

5. N.T. 133, Commission Hearing of August 20, 1987.

the transcription of those February 17 proceedings [6] that an executive meeting had been held on February 13, 1987 at which time a vote had been taken on whether to serve Blystone with a letter from the district attorney's office indicating it had not found a basis to prosecute. At that meeting it also appears that Council members discussed their views on Blystone's demotion. The vote, however, *to demote* was taken at the February 17, 1987 open meeting. And, the mere fact that *the charges* were not formally voted on at an open meeting is of no consequence as (1) such vote is not required by the Sunshine Act or the Borough Code and (2) it is clear beyond doubt and not contested that Council knew what the charges were.

■. Blystone's third argument is that the Borough failed to present substantial evidence to support the charges. We disagree. Officer Ayers clearly testified with respect to the failure to issue citations for the driving under the influence charges. The fact that Blystone's testimony or that of other witnesses was to the contrary is no basis for finding a lack of substantial evidence. The Commission, which was the only body to make factual findings in this case, was faced with conflicting testimony and credibility determinations; these determinations were within its province.

■ Finally, Blystone contends that due process was violated because his hearing was delayed from August 20, 1987 until May 25, 1988. He alleges no particular prejudice because of this delay and in fact was himself able to procure the deposition of James McClafferty during this period. We can see no violation of due process on these facts. *Accord Pittsburgh Board of Public Education v. Pennsylvania Human Relations Commission*, 128 Pa. Commonwealth Ct. 324, 563 A.2d 581 (1989) (thirteen year delay).

Affirmed.

---

6. The transcript of proceedings is appended to the Borough's brief. It was apparently offered into evidence without objection.

## ORDER

NOW, December 4, 1991, the order of the Court of Common Pleas of Allegheny County in the above captioned matter is hereby affirmed.

SILVESTRI, Senior Judge, dissenting.

The Court of Common Pleas of Allegheny County rendered its decision under the limited discretion enunciated in *Staton v. Civil Service Commission of the City of Philadelphia,* 1 Pa. Commonwealth Ct. 543, 275 A.2d 716 (1971). As the majority notes, the trial court employed the incorrect scope of review. The majority determined, however, that since Blystone had not raised the issue in this Court, it was accordingly waived; but rather than remand to the trial court to consider the appeal of Blystone under the proper standard of review, the majority addressed the appeal of Blystone only on the basis of substantial evidence [1] as to the charges under Section 1190 of the Borough Code, 53 P.S. § 46190.

Blystone's right of appeal derived from Section 1191 of the Borough Code which provides, *inter alia,* that "[a]ll parties concerned shall have immediate right of appeal to the court of common pleas of the county, *and the case shall*

---

1. The majority in footnote 2 quotes the portion of Section 1191 concerning scope of review and then states that the trial court had the authority to conduct a more expansive and de novo review. After stating that Blystone had waived the issue of incorrect scope of review, the majority concluded footnote 2 with the following quote "[t]herefore, we shall employe the *Commission's* findings in reviewing this case."

In so far as the testimony relating to the charges against Blystone under Section 1190, the only reference thereto is contained on page 34 of the majority's opinion, as follows:

Blystone's third argument is that the Borough failed to present substantial evidence to support the charges. We disagree. Officer Ayers clearly testified with respect to the failure to issue citations for the driving under the influence charges. The fact that Blystone's testimony or that of other witnesses was to the contrary is no basis for finding a lack of substantial evidence. The Commission, which was the only body to make factual findings in this case, was faced with conflicting testimony and credibility determinations; these determinations were within its province.

*there be determined as the court deems proper."* 53 P.S. § 46191 (emphasis added). The plain language of the statute not only affords the parties the right to have their case determined by the court of common pleas, but to have it determined as that court deems proper.

In *Eppolito v. Bristol Borough,* 19 Pa.Commonwealth Ct. 99, 339 A.2d 653 (1975), it was stated, "[i]t is well settled that the court below had discretion to modify the action of the Civil Service Commission." When the court of common pleas is faced with an appeal pursuant to Section 1191 and it does not make a determination thereof because it, as herein, applied the wrong standard of review, the appellant (Blystone) has been denied his right to appeal, since there has been no determination made as "the court deems proper." Stated another way, since the court has the discretion to modify the action of the Civil Service Commission, Blystone has the right to have the action of the Civil Service Commission considered by the trial court with the possibility of having such action modified.

As further stated in *Eppolito,* our scope of review under Section 1191 is to examine the testimony to determine whether the findings are supported by the evidence or whether the court was guilty of an abuse of discretion or an error of law. It is true that this Court can on its own determine whether the findings of the Commission are supported by the evidence. However, absent a determination by the trial court, who has the discretion to modify the action of the Civil Service Commission, which this Court does not possess, this Court cannot properly review the action of the Civil Service Commission consistent with the appeal rights of Blystone under Section 1191.

For the foregoing reasons, I would reverse and remand the matter to the court of common pleas to address the appeal of Blystone and to make a determination as it deems proper.