# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicholas J. Pugliese,                   :
              Appellant        :
                               :
           v.                     :   No. 2297 C.D. 2014
                               :   Submitted: September 17, 2015
Zoning Hearing Board of                 :
Bethlehem Township                      :
                               :
           v.                     :
                               :
Hariton Parashos                        :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**             **FILED: October 15, 2015**

In this zoning appeal, Nicholas J. Pugliese (Applicant), a real estate developer, asks whether the Court of Common Pleas of Northampton County (trial court) erred in affirming a decision of the Zoning Hearing Board of Bethlehem Township (ZHB) that denied his request for a dimensional variance from the minimum lot width requirement in the Bethlehem Township Zoning Ordinance (zoning ordinance). Applicant argues the ZHB erred in denying his dimensional variance request where he satisfied all the applicable requirements. Alternatively, he asserts the ZHB erred in denying his request for a *de minimis* variance. Upon review, we affirm.

# I. Background

Applicant owns a 42,000-square foot undeveloped parcel (property) that lies in Bethlehem Township's (Township) rural residential (RR) zoning district. The property is located on Country Club Road near the intersection of Knollcroft Avenue. Applicant obtained title to the property in 1998. The property is 240 feet in width and 175 feet in depth.

Applicant seeks to "re-subdivide" the property to create two contiguous substandard lots that are each 120 feet in width and 175 feet in depth. ZHB Op., 3/26/14, at 1. Applicant proposes to construct a home on each of the newly created lots. If re-subdivision were permitted, each lot would consist of a substandard configuration because the zoning ordinance requires a minimum lot width of 125 feet rather than the proposed 120 foot width.

In January 2014, Applicant filed an application with the ZHB seeking a variance from the zoning ordinance's 125-foot minimum lot width requirement to permit the creation of two lots, each with a width of 120 feet. Applicant indicated that if he received the requested variance relief, he would seek the necessary approval to subdivide the property into two lots.

The ZHB held a hearing on Applicant's request. Applicant testified on his own behalf and presented the testimony of Eugene Weber, P.E. (Applicant's Engineer). Several neighboring objectors appeared in opposition to Applicant's request. After the hearing, the ZHB issued a decision in which it made the following relevant findings.

In support of his application, Applicant asserted the grant of a five-foot width variance for each lot represented a *de minimis* deviation from the zoning ordinance's minimum lot width requirement. As such, the variance would not substantially or permanently injure the appropriate use of adjacent, conforming properties. Applicant further testified he would suffer a hardship that he did not create if the ZHB denied relief. Specifically, the property is adjacent to State Route 33, which generates significant noise, and it also lies next to a Township septic system pumping station, which creates odors. Applicant asserted no one would purchase an expensive residence on such a lot; therefore, from an economic standpoint, Applicant believed it necessary to construct two less expensive homes on the property.

Notably, Applicant confirmed that the 42,000 square foot property can be developed in compliance with all of the requirements of the zoning ordinance. He could not offer any reason why creation of two substandard lots was necessary other than for purely economic reasons.

At the ZHB's request, its solicitor performed a title search for the property, which revealed the existence of several impediments to re-subdivision. In particular: (1) a prior subdivision plan states the property may not be further subdivided without the approval of the property's prior owners, and no such approval was presented to the ZHB; (2) Pennsylvania Power and Light maintains an easement over the property and Applicant's plan does not reflect the existence of this easement; and, (3) a 50-foot gas line easement for underground

transportation of petroleum products exists in favor of Interstate Energy Company, which was never released.

For their part, several neighboring objectors maintained that creation of two substandard lots would decrease the value and use of their properties, and the construction of inexpensive homes would alter the essential character of the neighborhood.

Based on the evidence presented, the ZHB determined Applicant did not explain why he could not construct a single-family home on the property that complied with the zoning ordinance. In actuality, the ZHB stated, there were no unique physical conditions or circumstances that precluded compliance with the zoning ordinance. Thus, the ZHB determined the property could be developed in conformity with the zoning ordinance, and no variance was necessary to enable reasonable use of the property because a residence similar to other residences in the neighborhood could be built on the property without any zoning relief.

The ZHB further determined Applicant himself created any hardship as he knew of the lot configuration and the property's location next to a highway and septic system pumping station. The ZHB also found the grant of a variance would alter the essential character of the neighborhood, which is comprised of single-family homes on compliant lots. Additionally, the ZHB determined the variance sought was not the minimum variance that would afford relief.

4

As to Applicant's assertion that a *de minimis* variance was appropriate, the ZHB stated, among other things, that the 10-foot deviation Applicant sought, in the form of two separate, five-foot dimensional variances was significant when compared to those *de minimis* deviations permitted by Pennsylvania appellate courts. The ZHB further stated Applicant could build a single-family home on the property without the need for any zoning relief. Thus, the ZHB denied Applicant's request for a dimensional variance from the zoning ordinance's lot width requirements, and, in the alternative, Applicant's request for a *de minimis* variance. Applicant appealed to the trial court.

Without taking additional evidence, the trial court affirmed. The trial court determined Applicant did not establish *any* of the criteria necessary to obtain a variance. Specifically, the trial court stated, Applicant's claim of hardship lacked merit because there were no unique physical circumstances of the property that would prevent Applicant from developing it in conformity with the zoning ordinance. Further, Applicant could not prevail even under the relaxed standard set forth in Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh, 721 A.2d 43 (Pa. 1998), for the grant of a dimensional variance because mere evidence that Applicant would obtain a greater profit if the variance were granted was insufficient to prove hardship.

In addition, the trial court determined substantial evidence supported the ZHB's findings that any hardship was self-created, and that the grant of the variance would alter the essential character of the neighborhood. Finally, the trial court determined, despite the apparent *de minimis* nature of the requested variance,

5

the ZHB was not *required* to grant the requested variance on the ground that the deviation sought was minor. Rather, such a decision was a matter within the ZHB's discretion, and, as a result, the trial court would not substitute its judgment for the ZHB on this issue.

Applicant appealed to this Court, and the trial court directed him to file a concise statement of the errors complained of on appeal, which he did. The trial court then issued a brief opinion pursuant to Pa. R.A.P. 1925(a) in which it explained that it addressed the issues raised in Applicant's statement in its prior opinion, with the exception of one issue. Specifically, the trial court stated, to the extent Applicant asserted the ZHB improperly relied on a title search for the property performed by its solicitor, the results of that search had no bearing on the ZHB's supported determination that Applicant did not prove it was entitled to variance relief. This matter is now before us for disposition.[1]

## II. Issues

On appeal,[2] Applicant argues the ZHB erred in denying his dimensional variance request where he satisfied all the requirements necessary to obtain a dimensional variance. Alternatively, he contends the ZHB erred in

---

[1] Objector Hariton Parashos was precluded from filing a brief or participating in oral argument. No other neighboring objectors filed briefs. Applicant and the ZHB filed briefs with this Court.

[2] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005).

6

denying his request for a *de minimis* variance where he seeks only a minor deviation from the zoning ordinance.

## A. Dimensional Variance
### 1. Contentions

Applicant first argues the ZHB erred in denying his dimensional variance request. Section 275-34 of the zoning ordinance governs the lot and setback requirements in the RR district. Section 275-34(C) states, as pertinent: "Minimum lot width: 125 feet at the minimum front yard setback line …." Id.; Reproduced Record (R.R.) at 28. Applicant contends he sought a dimensional variance to allow the division of the property into two separate plots. He asserts he sought a five-foot variance from the 125-foot lot frontage requirement for each of the two proposed, newly created lots.

Applicant maintains the burden of proving hardship is relaxed under Hertzberg where, as here, an applicant seeks only to deviate from a zoning ordinance's dimensional requirements. Under Hertzberg, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance, including: "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." Id. at 50. Applicant maintains that, although a variance applicant must show unnecessary hardship will result if the variance is denied and the proposed use is not contrary to the public interest, he need not show the property cannot be used for any other permitted use

in order to show unnecessary hardship where only a dimensional variance is sought.

### a. Hardship

Applicant argues that before the ZHB he presented the testimony of his Engineer in support of the requested variance. Applicant's Engineer explained the property abuts the right-of-way of State Route 33 and is surrounded by homes on half-acre lots. The property is vacant and has remained vacant for an extended period. A sewer authority pump station abuts the property to the north.

Applicant's Engineer explained the property has a unique physical circumstance in that, while the proposed, newly created lot widths are just shy of that required by the zoning ordinance, the property is exactly 42,000 square feet, which indicated to him that the intent was to create two lots each with an area of exactly 21,000 square feet, the minimum lot size required in the RR district.

Applicant's Engineer further testified it was his understanding that Applicant purchased the property with the intent of developing two parcels. Applicant's Engineer testified that if two lots were placed on the property, the property could not be developed in strict conformity with the zoning ordinance. He further explained the hardship was not self-created, and the deviation sought, five feet for each proposed lot, represents the minimum relief available in order to build the two homes. Further, although Applicant's Engineer testified the subject property could be developed in compliance with the zoning ordinance as it currently exists, with a single home on a single lot, he noted the relief requested

8

was so *de minimis* that Applicant would suffer unnecessary hardship if the ZHB denied the variance.

Applicant argues his testimony explained that the property lies near State Route 33 and, as a result, noise generated by the highway greatly reduces its value. The property is also located next to a disposal plant and pumping station, which is an eyesore and emanates foul odors. Applicant also testified that when he purchased the property, State Route 33 was not completed, and he was unaware it could be extended or of the noise it would create. Applicant could not recall if the pumping station existed when he purchased the property. Applicant further testified the requested variance would alleviate a financial hardship, explaining that, with the proximity of the highway and the pumping station, it would be impossible to sell a more expensive single home; however, selling two less expensive homes was possible.

Applicant points out that he purchased the property for $50,000, and he invested approximately $85,000 to $90,000 into it. He explained that, as it stands, the property is one acre and he could not "get $500,000 or anything for it." R.R. at 86.

Applicant contends his testimony and the testimony of his Engineer establish that he is seeking a dimensional variance, which is a mere five feet for each proposed lot, or 10 feet of total frontage on Country Club Road. Given that this request involves a dimensional variance, the relaxed hardship standard applies. Applicant argues his testimony, coupled with the testimony of his Engineer,

9

reveals the property contains unique physical conditions and the unnecessary hardship is caused by those conditions.

**b. Adverse Community Impact**

Applicant next argues, despite the testimony of the neighboring objectors, the record reveals the requested variance would not alter the essential character of the neighborhood, nor would it substantially impair the appropriate use or development of adjacent property or be detrimental to the public welfare. Applicant asserts that, although one of the objectors testified the value of his property would decrease if Applicant's proposal were approved, the objector presented no evidence to substantiate that claim. Further, while the same objector explained that it would be a totally different neighborhood if two homes were placed next to each other on the property, he presented no evidence to support this claim.

As to the proposed construction, Applicant's Engineer testified that if the variance were granted, Applicant would have to proceed before the planning commission and any construction would be required to meet any and all requirements, including setback requirements in the zoning district. Applicant's Engineer also testified the homes Applicant proposes to build would not alter the essential character of the neighborhood. The homes would not "stick out," would not cause any problems, would meet the setback and other requirements, would be of good quality and would be a good fit for the neighborhood. R.R. at 59.

Thus, Applicant argues the ZHB erred in finding that the grant of the variance would be contrary to the public interest or that the essential character of

the neighborhood would be altered if the variance was granted. Applicant asserts the record lacks substantial evidence to support this finding. Rather, all of the evidence shows the character of the neighborhood would remain unchanged, and there would be no negative impact on the objectors' properties or the public interest.

### c. Substantial Evidence

Applicant further maintains the ZHB's findings are not supported by substantial evidence. He argues the ZHB's findings regarding the objectors' concerns are not supported by evidence, but rather the objectors' mere opinions and general assertions as to the impact on the neighborhood that would occur as a result of the proposed construction. Applicant, on the other hand, presented evidence as to its proposal, which was sufficient to establish its right to the requested variance. Applicant further contends a review of the transcript of the ZHB hearing reveals the ZHB believed it was somehow precluded from granting the requested variance under any circumstances, despite the fact that Applicant presented sufficient evidence to justify the grant of a dimensional variance.

### 2. Analysis

Initially, we note, this Court may not substitute its interpretation of the evidence for that of the ZHB. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005). It is the function of a ZHB to weigh the evidence before it. Id. The ZHB is the sole judge of the credibility of witnesses and the weight afforded their testimony. Id. Assuming the record contains substantial evidence, we are bound by the ZHB's findings that result from resolutions of credibility and conflicting testimony. Id.

11

A ZHB may grant a variance when the following criteria are met:

> (1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd., 83 A.3d 488, 520 (Pa. Cmwlth.), appeal denied, 101 A.3d 788 (Pa. 2014) (citation omitted); see also Section 275-11(F)(4)(a)(1)-(5) of the zoning ordinance.

A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations. Hertzberg. The same criteria apply to use and dimensional variances. Id. However, in Hertzberg, our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance.

Under Hertzberg, courts may consider multiple factors in determining whether an applicant established unnecessary hardship for a dimensional variance. These factors include: "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building

12

into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." Id. at 50 (emphasis added).

Although Hertzberg eased the requirements, it did not remove them. Tri-County. An applicant must still present evidence as to each of the conditions listed in the zoning ordinance, including unnecessary hardship. Id. Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in Hertzberg. See Soc'y Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment, 42 A.3d 1178 (Pa. Cmwlth. 2012).

Nevertheless, "Hertzberg articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship." Soc'y Hill Civic Ass'n, 42 A.3d at 1188 (quoting Yeager v. Zoning Hearing Bd. of City of Allentown, 779 A.2d 595, 598 (Pa. Cmwlth. 2001)). Further, in Marshall v. City of Philadelphia, 97 A.3d 323 (Pa. 2014), the Supreme Court stated: "This Court has repeatedly made clear that in establishing hardship, an applicant for a variance is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose." Id. at 330 (emphasis in original).

Here, the ZHB determined Applicant did not prove the requisite unnecessary hardship. In so doing, the ZHB determined Applicant "failed to submit evidence reflecting why construction of a single-family private residence

13

may not take place in compliance with the zoning ordinance. In actuality, there are no unique physical circumstances or conditions that preclude compliance with the zoning ordinance." ZHB Op. at 6. The ZHB further determined the property can be developed in strict conformity with the zoning ordinance. Id. at 7. "No variance is necessary to enable the reasonable use of the property since a residence similar to the other residences in the neighborhood could be built on the [property]." Id. We discern no error in the ZHB's determination that Applicant did not prove the requisite unnecessary hardship even under the relaxed standard set forth in Hertzberg.

Applicant testified denial of the variance would result in hardship because the property's proximity to the pump station and State Route 33 make it less valuable as a single lot rather than two lots. R.R. at 86-92. Applicant did not testify that there are unique circumstances or conditions of the property that preclude or hinder development of the property in conformity with the zoning ordinance. In fact, both Applicant and his Engineer admitted the property could be developed in compliance with the zoning ordinance by constructing one single-family home. R.R. at 63, 91. Essentially, Applicant testified that, because of the property's proximity to State Route 33 and the pump station, he would realize a greater profit if he could develop the property with two homes rather than one. R.R. at 89-91. Thus, as the ZHB determined, the need for the variance stems from Applicant's desire to realize a greater profit by constructing two homes on the property rather than one home. This is insufficient to constitute unnecessary hardship.

14

This Court consistently rejects requests for dimensional variances where proof of hardship is lacking. Where no hardship is shown, or where the asserted hardship amounts to a landowner's mere desire to increase profitability, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth by the Supreme Court in Hertzberg. See, e.g., Soc'y Hill Civic Ass'n (rejecting applicants' request for dimensional variance from zoning code's loading space requirement where need for variance was triggered by applicants' desire to expand use of property to maximize profitability); Singer v. Zoning Bd. of Adjustment of City of Phila., 29 A.3d 144 (Pa. Cmwlth. 2011) (rejecting applicant's request for dimensional variances from zoning code's parking, floor area ratio and loading dock requirements where asserted hardship amounted to applicant's desire to maximize development potential of property); Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh, 997 A.2d 423 (Pa. Cmwlth. 2010) (rejecting applicant's request for dimensional variance for proposed sign where only asserted hardship involved alleged benefit to community and increase in income); Twp. of Northampton v. Zoning Hearing Bd. of Northampton Twp., 969 A.2d 24 (Pa. Cmwlth. 2009) (rejecting applicant's request for variance from ordinance's off-street parking requirements where no evidence of hardship presented even under relaxed Hertzberg standard and evidence revealed applicant could use property in a manner consistent with ordinance requirements); In re Boyer, 960 A.2d 179 (Pa. Cmwlth. 2008) (rejecting applicant's requests for dimensional variances from ordinance's steep slope and setback requirements in order to construct in-ground pool where no evidence of hardship presented even under relaxed Hertzberg standard); Se. Chester County Refuse Auth. v. Zoning Hearing Bd. of London

15

Grove Twp., 898 A.2d 680 (Pa. Cmwlth. 2006). (rejecting request for dimensional variance where evidence indicated applicant could continue to operate at a profit without variance relief; no hardship shown); One Meridian Partners, LLP v. Zoning Board of Adjustment of City of Phila., 867 A.2d 706 (Pa. Cmwlth. 2005) (rejecting request for dimensional variance from floor area ratio and height requirements where asserted hardship was essentially financial in nature); Yeager v. Zoning Hearing Board of City of Allentown, 779 A.2d 595 (Pa. Cmwlth. 2001) (rejecting applicant's request for dimensional variances from ordinance's setback and clear sight triangle requirements where only hardship amounted to applicant's desire to construct a building for its new car dealership that complied with specifications required by vehicle manufacturer).

Because we discern no error in the ZHB's determination that Applicant did not prove the requisite unnecessary hardship to justify the grant of the requested dimensional variance, we need not address at length whether Applicant met its burden of proving it satisfied the remaining variance criteria. It is sufficient for current purposes to state that no error is apparent in the ZHB's determinations that any alleged hardship was self-created,[3] and that the variance

---

[3] The ZHB determined any alleged hardship was self-created because Applicant was aware of the lot configuration and its location next to the planned extension of State Route 33 and the pump station when he purchased the property in 1998. This analysis is faulty. Applicant did not create the current lot configuration, and he did not construct State Route 33 or the pumping station. Stated otherwise, mere knowledge of these pre-existing conditions does not create a new hardship for the property. However, Applicant will need the variances because he intends to create two new undersized lots where none currently exist. To that extent, he will be creating the undersized lot hardship he seeks to remedy. Thus, while we disagree with the ZHB's rationale, we discern no error in the ultimate determination it reached on the self-created hardship issue.

16

sought is not the minimum that would afford relief.[4]   Similarly, we do not discern reversible error in the ZHB's determination that the grant of a variance would alter the essential character of the neighborhood.[5]

## B. *De Minimis* Doctrine
### 1. Contentions

Alternatively, Applicant contends the ZHB erred in failing to grant the requested variance under the *de minimis* doctrine.   He asserts the *de minimis* doctrine applies where an applicant seeks only a minor deviation from a zoning ordinance and rigid compliance with the ordinance is not necessary to preserve the public interests the ordinance seeks to protect.

Here, Applicant argues the record reveals he satisfied these two factors.  Applicant maintains that, as his Engineer explained, the variance sought

---

[4] The ZHB determined the variance sought is not the minimum variance that would afford relief given that Applicant could construct a home on the property without the need for any zoning relief.  In light of Applicant's testimony that the property could be developed for one single-family home without the need for zoning relief, no error is apparent in the ZHB's determination in this regard.

[5] Although Applicant takes issue with this ZHB determination, which he asserts is premised on the mere opinions of the objectors, *Applicant*, not the objectors, bore the burden of proving that the grant of the variance would not alter the essential character of the neighborhood. Applicant did not persuade the ZHB on this point.  To that end, although Applicant maintains his Engineer testified that the grant of the requested variance would create no adverse community impact, the ZHB did not credit that testimony.  Further, our review of the record reveals the objectors testified that, if the ZHB granted the variance, the essential character of the neighborhood would be altered because Applicant would construct two homes on smaller lots, while other homes in the neighborhood are situated on larger lots.  R.R. at 116, 134, 139.  Thus, the grant of the variance would increase density and would have a negative impact on property values.  Id.  In addition to their testimony, the objectors submitted documentary evidence in the form of photographs and tax maps in order to illustrate the character of the area surrounding the property.  Certified Record, Objector Exs. 1-9.  Because the record supports the ZHB's determination on this point, we reject Applicant's argument.

17

was for lot width. The zoning ordinance requires a lot width of 125 feet. The total frontage of the property is 240 feet, and Applicant seeks to create two lots, each with a width of 120 feet. Thus, Applicant seeks a variance to deviate from the required lot width by five feet for each lot. This five-foot deviation is a mere 4% deviation from the zoning ordinance requirement, which is clearly minor. Applicant further contends the record reveals rigid compliance with the zoning ordinance is unnecessary to preserve the public interests the zoning ordinance seeks to protect. Thus, although he satisfied the requirements to obtain a dimensional variance, in the alternative, the ZHB should have granted the variance as *de minimis*.

## 2. Analysis

"The *de minimis* doctrine is an extremely narrow exception to the heavy burden of proof which a party seeking a variance must normally bear." Swemley v. Zoning Hearing Bd. of Windsor Twp., 698 A.2d 160, 162 (Pa. Cmwlth. 1997) (quoting King v. Zoning Hearing Bd. of Borough of Nazareth, 463 A.2d 505, 505 (Pa. Cmwlth. 1983)). "The *de minimis* zoning doctrine authorizes a variance in the absence of a showing of the unnecessary hardship traditionally required to support such relief where the violation is insignificant and the public interest is protected by alternate means." Nettleton v. Zoning Board of Adjustment of City of Pittsburgh, 828 A.2d 1033, 1038 (Pa. 2003). Thus, "it is not necessary to apply the normal standards for a variance … where the variance requested is *de minimis*." Lench v. Zoning Bd. of Adjustment of City of Pittsburgh, 13 A.3d 576, 581 (Pa. Cmwlth. 2011) (quoting Nettleton, 828 A.2d at 1038).

18

This Court consistently holds that "[t]he grant of a *de minimis* variance is a matter of discretion with the local zoning board." Id. at 581-82 (citing Segal v. Zoning Hearing Bd. of Buckingham Twp., 771 A.2d 90 (Pa. Cmwlth. 2001)) (emphasis added). Thus, "there is no general right to a *de minimis* variance in Pennsylvania …." 200 W. Montgomery Ave. Ardmore, LLC v. Zoning Hearing Bd. of L. Merion Twp., 985 A.2d 996, 1001 (Pa. Cmwlth. 2009) (citation omitted). As with a traditional variance, it is essential that the grant of a *de minimis* variance be decided on a case-by-case basis. Swemley.

Here, the ZHB did not deem Applicant's variance request insignificant because Applicant seeks a 10-foot deviation from the minimum lot width requirement. The ZHB deemed Applicant's request "significant" in comparison to *de minimis* variances previously approved by Pennsylvania courts. ZHB Op. at 7. The ZHB also declined to grant the requested variances as *de minimis* on the ground that Applicant could construct a home similar to those that presently exist in the neighborhood without the need for *any* zoning relief. Id. Although the ZHB incorrectly stated that the grant of a *de minimis* variance requires proof of unnecessary hardship, we discern no abuse of discretion in the ZHB's ultimate denial of Applicant's *de minimis* variance request.

Specifically, Applicant did not prove the requested deviation was insignificant. Rather, Applicant seeks two variances from the zoning ordinance's minimum lot width requirement in order to enable subdivision of the property so that he can construct two homes. As such, grant of the requested variance would effectively double the density of the use and create two substandard lots that lack

19

the required lot width, despite the fact that Applicant can make reasonable use of the property by building a single-family home without the need for any zoning relief. Under these circumstances, no abuse of discretion is apparent in the ZHB's determination that Applicant did not prove the requested deviation was insignificant.

In addition, in order for the ZHB to grant a *de minimis* variance it must be shown that "the public interest is protected by alternate means." Nettleton, 828 A.2d at 1038. Thus, to obtain a *de minimis* variance, an applicant must prove that "strict compliance is not necessary to protect the public interest." Id. at n.6. Here, the ZHB found the grant of the requested variance would be contrary to the public interest because it would alter the essential character of the neighborhood, which is comprised of single-family homes on compliant lots. ZHB Op. at 7. The ZHB also found that neighboring objectors raised concerns that the creation of two substandard lots would decrease the value and use of their residential properties, and the construction of inexpensive residences would alter the essential character of the neighborhood. ZHB Op., Finding of Fact No. 9. As a result, Applicant did not prove strict compliance with the zoning ordinance's minimum lot width requirement for each of its two proposed non-compliant lots was not necessary to protect the public interest.

Moreover, as the trial court recognized, this Court repeatedly holds that the grant of a *de minimis* variance is a matter of discretion for the ZHB. McCarry v. Haverford Twp. Zoning Hearing Bd., 113 A.3d 381 (Pa. Cmwlth. 2015); Hawk v. City of Pittsburgh Zoning Bd. of Adjustment, 38 A.3d 1061 (Pa.

20

Cmwlth. 2012); Lench; 200 W. Montgomery Ave.; Segal; Swemley; Alpine, Inc. v. Abington Twp. Zoning Hearing Bd., 654 A.2d 186 (Pa. Cmwlth. 1995). Thus, we decline to substitute our judgment for that of the ZHB on the issue of whether Applicant proved entitlement to the *de minimis* variances sought here.

Based on the foregoing, we affirm.[6]

_____

ROBERT SIMPSON, Judge

---

[6] As a final issue, Applicant argues the ZHB erred when it relied on evidence not properly before it. To that end, he asserts, at the ZHB hearing, evidence was offered regarding a title search performed by the ZHB's Solicitor. While the solicitor discussed the title search, it was never formally admitted as evidence. Further, at the hearing, Applicant stated he never saw the title search, and he was unprepared to answer questions regarding it. He argues the ZHB's Solicitor's decision to independently conduct a title search was improper. Further, the ZHB made a finding concerning the results of the title search, which it deemed "noteworthy." F.F. No. 6. Applicant argues the ZHB erred in relying on the results of the title search where it was not properly part of the record.

This issue is irrelevant to a determination of the merits of Applicant's variance request. Thus, even if the ZHB's Solicitor somehow acted improperly in examining public records of which Applicant was unaware before the ZHB hearing, this fact had no bearing on the ZHB's ultimate determination that Applicant did not meet its burden of proving entitlement to the requested dimensional variance or, in the alternative, a *de minimis* variance. As such, although the ZHB made a finding based on the results of the title search, see F.F. No. 6, this finding was unnecessary to the ZHB's ultimate decision that Applicant did not meet his burden of proving entitlement to the requested variance. Therefore, Applicant's argument is unavailing.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicholas J. Pugliese,         :

           Appellant     :

                         :

       v.             :   No. 2297 C.D. 2014

                         :

Zoning Hearing Board of    :

Bethlehem Township       :

                         :

       v.             :

                         :

Hariton Parashos         :

## **O R D E R**

AND NOW, this 15th day of October, 2015, the order of the Court of Common Pleas of Northampton County is AFFIRMED.

 

                              _____

                              ROBERT SIMPSON, Judge